IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANGEL SANTOS<br><br>   v.<br><br>DALE MEISEL, et al. | CIVIL ACTION<br><br>NO.   13-3134 |
|---|---|

**MEMORANDUM RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Baylson, J.                                                                                                                May 19, 2016

**I.   Introduction**

Pro se Plaintiff Angel Santos has sued the following individuals, all of whom were at the relevant time affiliated with Lehigh County Prison in Lehigh, Pennsylvania, as a result of injuries sustained from fellow inmate Ruben Rivera on April 30, 2012:

1. Dale Meisel, Warden;

2. Nancy Afflerbach, Treatment Manager;

3. Edward Sweeney, Director;

4. Steve Miller, Treatment Supervisor;

5. Carol Sommers, Treatment Supervisor;

6. Cindy Egizio, Prison Services Manager;

7. James Bloom, Deputy Captain Warden of Security;

8. Janine Donate, Deputy Warden of Treatment;

9. Cliff Knappenberger, Internal Affairs Investigator; and

10. Michelle Ramos, Counselor.[1]

Plaintiff alleges that despite knowing of his history with Rivera, the prison assigned Plaintiff to

---

1  This Court previously sua sponte dismissed Plaintiff's claims against Lehigh County Prison.   ECF 12.

1

Rivera's housing unit (2C). Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of the Eight Amendment's prohibition of cruel and unusual punishment based on a deliberate indifference theory. Plaintiff's complaint, however, also at times sound in negligence, and the Court will construe Plaintiff's filing as asserting negligence claims as well.

Defendants have moved for summary judgment on grounds that the Prison Litigation Reform Act's ("PLRA") administrative exhaustion provisions, see 42 U.S.C. § 1997e (2016), bar Plaintiff's suit. ECF 34. Plaintiff's Opposition, if construed liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted) ("[a] document filed pro se is to be liberally construed"), contains a cross-motion for summary judgment on the merits. ECF 39.

For the reasons that follow, Defendants' Motion and Plaintiff's Motion shall be denied. Both parties shall supplement the record as detailed in the accompanying Order.

## II. Factual Background[2]

### A. Lehigh County Prison Grievance Procedures

At the time of the events giving rise to this litigation,[3] Plaintiff was incarcerated at Lehigh County Prison. Since 2007, the Prison has had a Grievance Policy and Procedure. ECF 34-7 Def. Ex. "C" at ECF 2 of 12 (Sweeney Aff.) ¶ 4; id. at ECF 5-12 of 12 (Policy and Sample Forms) (the "Policy").

---

2 The Court notes at the outset that per its Pretrial and Trial Procedures (available at https://www.paed.uscourts.gov/documents/procedures/notices/baypol.pdf), "[t]he party filing a Motion for Summary Judgment shall include . . . a 'Statement of Undisputed Facts,' which sets forth, in numbered paragraphs, all material facts that the moving party contends are undisputed, with record references." The responding party is then to set forth its own such Statement "responding to the numbered paragraphs set forth in the moving party's statement, either admitting that the paragraph is not disputed, or if it is disputed, setting forth those facts contended to be in dispute, with record reference to where the party's contention is supported in the papers filed with the Court on the dispositive Motion," along with any other additional facts which the responding party "contends preclude the granting of the [Motion for Summary Judgment]" (to which the moving party may then respond). Neither party employed this procedure, meaning the Court's job in assessing the factual record in this case is more difficult than it otherwise would be. Nevertheless, the facts appear to be undisputed as noted.

3 On April 18, 2016, Plaintiff notified the Court that he has been transferred to a new facility. ECF 41.

The Policy distinguishes between "grievable" and "not grievable" issues. Policy at ECF 6 of 12 (1.A, 1.B). "Staff actions" are considered grievable, while "Housing unit or cell assignment" is not. Neither term is defined under the Policy. Edward Sweeney, the prison's Director of Corrections, asserts that "alleged failure to keep identified and reported enemies separated" and "alleged failure to protect an inmate from assault by another inmate" are both "staff actions" under the Policy. ECF 34-7 Def. Ex. "C" at 3 of 12 (Sweeney Aff.) ¶¶ 10-11.

The Policy further distinguishes between a "Formal Grievance," which is "written on Lehigh County Prison's multi-part 'Inmate Formal Grievance, Part 1' form," and an "Informal Grievance," which is submitted either verbally "or in writing via an 'Inmate Request to Staff.'" Policy at ECF 5-6, 11-12 of 12 (Definitions; Sample Forms). Under the Policy, an inmate must first attempt to resolve a grievance informally. Id. at ECF 7 of 12 (3.A). After attempting informal resolution, an inmate may proceed with a formal grievance. Formal grievances must be received within 21 calendar days of "the event that triggered the grievance." Id. at ECF 7 of 12 (3.B; 4.E). The prison's Grievance Coordinator may reject a grievance not submitted in accord with the Policy. If a grievance is accepted, however, a final response must be provided within 15 calendar days via the "Inmate Formal Grievance, Part II" form. Id. at ECF 8 of 12 (5.E; 5.F).

An inmate may appeal a formal grievance decision to the prison's warden. "At the conclusion of the appeal, administrative remedies will have been exhausted . . . ." Id. at 6.A.

B. **Events Giving Rise to Plaintiff's Suit**

1. Background

On October 19, 2011, Plaintiff was involved in a physical altercation with inmates Leroy Harrison and Rueben Rivera. See ECF 39 at ECF 12-34 of 60 (prison incident reports and related documents). According to prison reports, several individuals including "Dep. Warden Bloom"

3

(who appears to be Defendant Bloom) witnessed this incident and were involved in breaking it up. The fight occurred in unit 2C of the prison.

At some unspecified time after the October incident but prior to April 17, 2012 (believed to sometime in January, see id. at ECF 55 of 60), and for reasons that are not clear from the record, Plaintiff was placed into administrative segregation. See Santos Dep. (Mar. 31, 2015) at 33.

2. Plaintiff's Communications with Prison Staff Before the April 30, 2012 Incident

On April 10, 2012, Plaintiff wrote an "Inmate's Request to Staff" form stating that he had a problem with inmate Remark Bell on the 2C unit. ECF 39 at ECF 53 of 60.[4] An individual appearing to be Defendant Ramos replied on April 11 that, "Inmate Bell entered as your enemy you will not go to 2C as long as he is there." ECF 30 at ECF 53 of 60.

On April 17, 2012, Plaintiff submitted an "Inmate's Request to Staff" to "Steve" to inquire why Plaintiff had not been let out of administrative segregation to the general prison population. Id. at ECF 54 of 60. Plaintiff also stated that he had no enemies on unit 3D of the prison. A person appearing to be Defendant Ramos responded on April 18 that Plaintiff "had an enemy" on 2C. It is not clear if Ramos meant Bell or Rivera. Ramos further stated that Plaintiff would not be placed on 3D because Plaintiff's "'co-hort' person involved with [his] misconduct" was there. Ramos further asked if Plaintiff wanted to unclaim his (unspecified) 2C enemy.

On April 19, 2012, Plaintiff filled out a Formal Grievance form. ECF 39 at ECF 55 of 60; ECF 28-3 at ECF 4 of 6 ("The April 19, 2012 Grievance"). The grievance form, in essence, stated that Plaintiff was unfairly being kept in administrative segregation and that he should be allowed to return to unit 3D. It specified that Plaintiff had a known enemy on unit 2C such that it would be

---

[4] Plaintiff testified at his deposition that "I even put an enemy that wasn't my enemy so I wouldn't go back down there to" unit 2C, Santos Dep. (Mar. 31, 2015) at 29, suggesting that Bell was not actually Plaintiff's enemy.

4

inappropriate to send him there.[5]  The form is signed by the prison's Grievance Coordinator, but it is unclear from the record who that individual was at this time.[6]

### 3. Plaintiff's April 30 Confrontation with Rivera and Resolution of the April 19, 2012 Grievance

Plaintiff was released from administrative segregation on April 30, 2012. That same evening, Rivera entered Plaintiff's cell and cut him above the back. ECF 39 at ECF 37 of 60.

On May 4, 2012, Plaintiff received a decision on his April 19, 2012 Grievance. ECF 39 at ECF 58 of 60. The decision, apparently signed by Defendant Sommers, stated, "The

---

5  The form reads as follows (emphasis added):

> On Approximate Date of April 17th, 2012, I inmate (Santos) had completed my 100 days of disciplinary segregation in the hole.  I was told that same exact day that I was headed over to the other side of the hole (3C1).  I have written several request slips to the counselor to see what was going on.  She (the counselor) informed me that the supervisor said I had an enemy on (2c) who was on my first misconduct number L7998 On 10-19-11, which I was convicted of for 67 Days D/S.  Then, I was told that they wouldn't place me on (3D) because supposedly I co horted with a person involved in my other misconduct which occurred on 1-25-12 Misconduct number L3, 505.  Now **my reason to grievance the classification policy and housing unit operations policy** is because both of these issues keep me housed in the hole where I no longer want to be.  I mentioned to the counselor that since I cant go to (2C), why can't you's just send me back to (3D) where I have no enemies nor any problems there.  Their excuse was that I'm co-horted with a person which is a lie.  But yet, on my first misconduct number L7,998, I was jumped in (2C) and wound up beating up both inmates.  **The inmate I assaulted is housed on (2C) at this time**. So I repeatedly mentioned to the counselor I want to avoid the issue or coming back to the hole for another fight.  So may you please send me back to (3D) because I have no enemies nor problems there.  Still, treatment's excuse is that I'm co-horted with another person which is in fact a total lie.  I was told if I tell the counselor to unclaim the enemy I can goe to (2C) only. Now, that doesn't make any sense whatsoever knowing I'm trying to avoid a problem that's already on (2C).  But yet I can go there, when in (3D) I have no enemies nor no problems, but yet I can't go there.  So as of Today these are my issues why I greivanced both policies, because I would like to goe back to (3D) and not remain housed in (3C1)..may you please resolve these issues thank you.  I would like more privileges such as visits and phone calls..  Thank you..  Angel Santos, 4-19-12
>
> I put formal request slips to the counselor to help me resolve these issues.  But she stated to me her supervisor keeps denying my complaints.  As of now I still have the request slips as proof. That's when I decided to grievance these policies.

6  Plaintiff again expressed unwillingness to go to unit 2C on April 20, 2012 via an "Inmate's Request to Staff" to "Counselor 3C1." ECF 39 at ECF 56 of 60.  Plaintiff stated, "Did you ever unclaim (Remark Bell) on 2C as my enemy.  If so do so, but **I refuse to goe to (2C).**  For my own best interest is because I don't want to come back for another fight. . I would still like to goe to (1A) though if I'm approved for it.  You may delete (Remark Bell) off my enemies list.  If I can't goe back to (3D) or (1A).  I'd rather wait until I'm allowed, too . . I know me, and I refuse to come back to the hole for another serious fight."  An individual appearing to be Defendant Ramos responded, "I did not unclaim any enemies for you.  I won't do that without written consent from you on a separate request asking me to do so."

5

classification committee decided not to send you to 3D where you and Jose Cruz assaulted another inmate. Jose Cruz still resides on 3D. You had a named enemy on 2C. Therefore, you need to remain on 3C1 A/S status." Plaintiff appealed the May 4 ruling the same day he received it, arguing that he had been sent to unit 2C despite the fact that the April 19, 2012 Grievance stated sending him there would result in contact with a known enemy.[7]

On May 18, 2012, Defendant Meisel send Plaintiff a memorandum rejecting his appeal as moot, stating, "You were moved to H/U 3d on 10 May 12." ECF 39 at 59. The prison placed Plaintiff back on 3D notwithstanding the earlier statements that Plaintiff could not be placed there because he "co horted" with a fellow inmate named Jose Cruz. It is unclear if Cruz remained on 3D when Plaintiff was transferred or what prompted the prison's change of opinion.

4. <u>Defendants' Treatment of Plaintiff's April 19, 2012 Grievance in this Litigation</u>

Defendants have characterized Plaintiff's April 19, 2012 Grievance as "concerning the subject matter of Plaintiff's lawsuit." See ECF 34-1 Def. Ex. "A" ¶¶ 13-14 (Requests for Admission to Plaintiff).

Despite this characterization, Defendants' Motion for Summary Judgment (which argues that Plaintiff's claims are barred for failure to exhaust his administrative remedies) fails to even once mention the April 19, 2012 Grievance. It instead mentions five other unrelated grievances Plaintiff made during 2011 and 2012, which Defendants argue demonstrate that Plaintiff was cognizant of how the grievance process worked. ECF 34 at 2.

---

[7] Plaintiff stated, "I appeal this situation, because as I complained about the issues I had on (2C) I was still sent down there where I happened to get slashed on my back, and given a misconduct that was later dismissed. So I appeal this situation for your lack of ignoring that I had an enemy on (2C), yet I was still sent down there where I was put in harm's way." ECF 39 at ECF 58 of 60.

### III.     Analysis

#### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

#### B. Exhaustion

"42 U.S.C. § 1997e(a), enacted as part of the PLRA, provides that a prisoner may not bring a § 1983 suit with respect to prison conditions 'until such administrative remedies as are available are exhausted.'" Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (quoting 42 U.S.C. § 1997e(a) (2016)). To "complete the administrative review process . . . means substantial compliance with the prison's grievance procedures." Small v. Camden Cty., 728 F.3d 265, 272 (3d Cir. 2013) (citations omitted). Because exhaustion is an affirmative defense, a defendant bears the burden of proof to show an inmate failed to exhaust. Id. at 271.

Defendants' Motion argues that the PLRA bars Plaintiff's claims because Plaintiff has failed to exhaust his administrative remedies. The argument has two sub-issues:

- First, Defendants frame Plaintiff's suit as asserting claims for failure to protect an inmate from an assault by another inmate and failure to keep identified and reported enemies separated. Defendants then posit that these claims are grievable under the Policy as "staff actions." ECF 34 at 6;

- Having contended that Plaintiff's claims are grievable, Defendants then argue that the

7

>    Policy required Plaintiff to file a grievance within 21 days of the April 30, 2012
>    incident with Rivera, and Plaintiff did not do so.   ECF 34 at 6.

The Court is not persuaded by Defendants' arguments.

First, it is far from clear that Plaintiff's complaint is grievable under the Policy.   Although Defendant Sweeney asserts that Plaintiff's allegations are "staff actions," they could be construed as not grievable "housing unit or cell assignments."   Plaintiff arguably is contending that he was aggrieved on April 19 by the prison's pending decision to place him in unit 2C, despite the fact that his enemy was residing on that housing block.

Even assuming that Plaintiff's complaint is grievable, Defendants' Motion ignores entirely Plaintiff's April 19, 2012 Grievance.   That grievance specified that Plaintiff had a known enemy on unit 2C and that Plaintiff should not be sent there.   Plaintiff was nevertheless assigned to unit 2C on April 30, and Rivera cut him there the same evening.   The prison's May 4 decision purporting to resolve Plaintiff's April 19 grievance did not address why Plaintiff was placed on unit 2C despite his complaint of having an enemy there.   Plaintiff timely appealed the May 4 decision only to have Defendant Meisel reject the appeal as moot, again without explaining why Plaintiff's request not to be sent to unit 2C was initially not honored.

The "primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007).   Plaintiff did not procedurally default by failing to file another grievance after suffering injury on April 30 when Plaintiff complained on April 19 that he would be endangered if assigned to unit 2C.   At least some individuals within the prison were clearly on notice from both before and after Rivera cut Plaintiff on the 30th that Plaintiff had an issue with being relocated to

unit 2C.  Furthermore, Plaintiff complied with the prison's policy in appealing the denial of his April 19, 2012 Grievance to the warden. See also Jackson v. Ivens, 244 F. App'x 508, 513 (3d Cir. 2007) (unpublished) (holding that plaintiff's claims were not barred by exhaustion requirement). Indeed, as outlined above Defendants' own Requests for Admission characterize the April 19, 2012 Grievance as "concerning the subject matter of Plaintiff's lawsuit" such that Defendants can hardly argue now that Plaintiff failed to exhaust his internal grievance remedies.  ECF 34-1 (Def. Ex. A) ¶ 14.

Accordingly, Defendants' Motion shall be denied because Defendants have not carried their burden of showing a failure to exhaust.  Because Plaintiff has cross-moved for summary judgment on the merits, the Court will examine his claims.

### C. Eighth Amendment Claim

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the unnecessary and wanton infliction of pain.  This constitutional limitation on punishment has been interpreted to impose a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners."  Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citations omitted).  Liability shall be imposed when a prison official is deliberately indifferent to "a substantial risk of serious harm to an inmate."  Id.

> [T]o make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk . . . the plaintiffs must meet the test from Farmer v. Brennan: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious.

Beers-Capitol v. Whetzel, 256 F.3d 120, 135 (3d Cir. 2001).  In contrast, to hold a supervisor liable for deficient policies the Court must "identify a specific policy or practice that the supervisor

failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Id. at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). Importantly, "deliberate indifference describes a state of mind more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994).

Summary judgment cannot be granted in Plaintiff's favor because numerous questions of material fact exist. Specifically, the record is unclear as to who played a role in the decision to place Plaintiff in 2C, whether any of the decision makers knew about Plaintiff's altercation with Rivera, whether Rivera was still residing on unit 2C at the time of Plaintiff's release from administrative segregation to that unit, and why Plaintiff was put there if Rivera was also present. The current record before the court appears silent as to Defendants Afflerbach, Sweeney, Miller, Egizio, Donate, and Knappenberger; appears as to Bloom to show that he had awareness of Plaintiff's October 2011 incident with Rivera; appears to demonstrate as to Ramos and Sommers that they were involved in processing the April 19, 2012 Grievance; and shows that Meisel denied Plaintiff's appeal of how that grievance was handled. As detailed in the accompanying Order, the Court will accept supplemental submissions from the parties to clarify these questions.

Accordingly, Plaintiff's cross-Motion for summary judgment shall be denied.

**D. Negligence**

Unlike his Eight Amendment claims, Plaintiff's negligence claims are not actionable because Pennsylvania law prohibits them.

1. Choice of Law Analysis

Plaintiff argues that under New York law, a prisoner may maintain a negligence claim against a state correctional facility. ECF 39 at ECF 7 of 60 (citing Sanchez v. State of N.Y., 784 N.E.2d 675 (N.Y. 2002)). Plaintiff incorrectly assumes, however, that New York law would govern any state law claims in this action, when in reality Pennsylvania law controls.

Plaintiff's primary cause of action in this litigation arises under a federal statute, 42 U.S.C. § 1983. This Court accordingly has jurisdiction over that claim pursuant 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

A negligence claim, unlike a claim under Section 1983, arises under state law. Pursuant to 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over any claim that is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." In determining which state's law to apply to Plaintiff's negligence claim, over which the Court has supplemental jurisdiction, the Court must look to Pennsylvania's choice-of-law rules. Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008) ("[W]hen a choice-of law question exists, a district court must apply the choice-of-law rules of the state in which it sits in order to determine which state's law applies.").

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties" unless another state has a more significant interest under principles of conflict of laws. Marks v. Redner's Warehouse Mkts., No. 890 MDA 2015, 2016 WL 639043, at *3 (Pa. Super. Ct. Feb. 17, 2016). In this case, Plaintiff's injury occurred in Pennsylvania. There does not appear to be any basis for applying New York law to Plaintiff's negligence claim that would trump the presumption that Pennsylvania law should

govern.

Therefore, this Court examines Plaintiff's negligence claim under Pennsylvania law.

2. Negligence Under Pennsylvania Law and the Pennsylvania Political Subdivision Tort Claims Act

Pennsylvania, unlike New York, has passed a law entitled the Pennsylvania Political Subdivision Tort Claims Act (the "Act"). 42 Pa. Cons. Stat. §§ 8541, 8542 (2016). "Under the [Act], local agencies such as school districts are given broad tort immunity. The Act provides that, 'no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.' 42 Pa. Cons. Stat. § 8541." Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). 42 Pa. Cons. Stat. § 8545 extends the same immunity to employees of the local agency for acts committed within the scope of their official duties.

Section 8542 of the Act provides for eight exceptions where a local agency can be held liable for negligence: 1) vehicle liability; 2) care, custody, or control of personal property; 3) real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody or control of animals. Plaintiff's claim for negligence does not fall within any of these categories. The key question, then, is whether Defendants as employees of a county prison are covered by the Act. If they are, Plaintiff cannot assert a negligence claim against them.

One court concluded that prison officials such as a warden are covered. Damron v. Smith, 616 F. Supp. 424, 426 (E.D. Pa. 1985) (dismissing negligence claim against warden); see also Mason v. Dauphin Cty. Prison, Civil No. 1:14-CV-1680, 2015 WL 6751015, at *8 (M.D. Pa. Nov. 5, 2015) ("[A] prison board and county board of commissioners also constitute local agencies

12

within the purview of the [Act], and are thus entitled to immunity from liability for any alleged negligence on their part that allegedly resulted in Ms. Mason's death."). This Court similarly concludes that a negligence claim cannot lie against a prison under Pennsylvania law, and consequently summary judgment will be granted in Defendants' favor to the extent Plaintiff pleads negligence.

## IV. Conclusion

As explained above, Defendants have failed to carry their burden to prove that Plaintiff did not exhaust his administrative remedies before filing suit. Defendants' Motion for Summary Judgment shall therefore be denied.

Plaintiff's Cross-Motion on the merits of his Eight Amendment is denied. Because Defendants are immune from negligence under Pennsylvania law, however, summary judgment is granted in their favor on any claims Plaintiff has sounding in negligence.

An appropriate Order follows.

O:\CIVIL 13\13-3134 santos v. lehigh cty\13cv3134.Memo re Defense MSJ.docx